IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| Gallie Mullins, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:10cv1421 (TRJ) |
| | ) | |
| Michael J. Astrue, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the court on the parties' cross-motions (nos. 16, 17) for summary

judgment.  Pursuant to 42 U.S.C. § 405(g), plaintiff Gallie Mullins seeks judicial review of the

final decision of defendant, the Commissioner of the Social Security Administration, denying his

claim for disability insurance benefits.  With the consent of the parties (no. 13), this matter was

referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) for entry of

judgment.  For the reasons stated below, the court finds that defendant's decision is supported by

substantial evidence and that there is no new evidence warranting remand, and accordingly grants

summary judgment for defendant and denies summary judgment for plaintiff.

**I.**

Plaintiff filed applications for disability insurance benefits and supplemental security

income on January 9, 2006.  R. at 19, 150-55.  Plaintiff stated that he had been disabled since

August 1, 2003 due to leg, neck, and arm problems resulting in pain that made him agitated,

unable to sleep, and "feel like [he was] going crazy." R. at 150, 153, 167. The applications were

denied initially on August 28, 2006 and upon reconsideration on November 7, 2006. R. at 112,

119. Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which

was held on September 26, 2007. R. at 124, 31. The ALJ denied plaintiff's claim on December

28, 2007. R. at 16-27. Plaintiff requested a review of the ALJ's decision, which was denied by

the Appeals Council on December 23, 2009, thereby making the ALJ's decision final. R. at 10-

13. After requesting and receiving extensions of time, plaintiff timely filed the complaint in this

matter.

## II.

Plaintiff was 40 years old as of the date of the hearing before the ALJ. R. at 36. He has

completed eleventh grade and has not obtained a GED. R. at 36. He last worked as a residential

electrician, but has not worked since August 2003. R. at 38, 218. Plaintiff alleges disability

since August 1, 2003 due to neck, arm, and left leg problems that require plaintiff to walk with a

cane. R. at 163, 167. Plaintiff alleges that his condition prevents him from standing for more

than a few minutes and from walking very far, limits his ability to lift, and produces pain that

makes him constantly agitated, interferes with his ability to sleep, and makes him "feel like [he

is] going crazy." R. at 167.

At the hearing before the ALJ, plaintiff testified that he helps out with chores around the

house by "tak[ing] care of the animals, try[ing] to ride a mower once in a while[,]" and doing the

"tiniest little things [he] can do to make dinner[.]" R. at 57. He stated that he tries to walk on a

treadmill twice a day for at least ten minutes at a time, but that he cannot do it every day. R. at

62-63. Plaintiff testified that he does not use a computer, but that he occasionally watches

television.  R. at 63.  When asked how he occupies his time during the day, plaintiff responded

that he studies for a ham radio license, and that he "tr[ies] to study a lot."  R. at 63.  Plaintiff also

stated that he used a citizen band radio.  R. at 64.  Plaintiff testified that he has a home traction

unit that he uses once or twice a week for fifteen minutes at a time to help alleviate his neck pain.

R. at 77-78.

In reviewing plaintiff's medical history, the ALJ focused on the treatment records of four

physicians, Dr. Virat Bakhshi, Dr. Jamison Chang, Dr. Harman Stubbe,[1] and Dr. Wendy

Westfield.  R. at 23-24.

Dr. Bakhshi provided notes beginning on November 10, 2005.  R. at 291.  Plaintiff

initially complained of progressively worsening back pain radiating down his legs, and later

added that his neck and arm were also affected.  R. at 290-91.  Dr. Bakhshi's examination

revealed tenderness and restricted range of motion in plaintiff's lower back.  R. at 272-91.  Dr.

Bakhshi diagnosed plaintiff with a back contusion, sciatica, muscle spasms, cervical spinal

stenosis, cervical disc displacement, neuropathy and radiculopathy, and broad based disc bulging

with nerve compression.  R. at 272-91.  Dr. Bakhshi prescribed several drugs over the course of

his treatment of plaintiff, including oxycodone, valium, prednisone, flexeril, dilaudid, avinza,

elavil, lodine, and zanaflex.  R. at 272-91.  Beginning May 29, 2006, Dr. Bakhshi's notes reflect

that he advised plaintiff to get an orthopedic opinion regarding the possibility of surgery, and that

plaintiff "cannot just live off the pain meds."  R. at 283.  Dr. Bakhshi's notes for the next six

appointments—on June 20, July 14, August 22, September 20, October 23, and November 21,

---

[1] The ALJ refers to Dr. Stubbe as "Dr. Stubbs," but it appears that "Stubbe" is correct. *See* R. at 297.

3

2006—reflect the same advice.  R. at 277-82.  On December 14, 2006, Dr. Bakhshi's notes state that plaintiff was going to collect his medical records for a surgical evaluation, and notes from plaintiff's two subsequent, and final, visits on February 12 and March 12, 2007 state that Dr. Bakhshi advised plaintiff to have surgery.  R. at 272-76.  Dr. Bakhshi's notes for December 14, 2006 and the two subsequent visits also state that Dr. Bakhshi advised plaintiff that he "needs to wean himself off the narcotic pain meds in the near future."  R. at 272-76.  The notes of plaintiff's last visit to Dr. Bakhshi, on March 12, 2007, state that plaintiff "has been referred to pain management."  R. at 272.

Plaintiff saw Dr. Chang once, on March 19, 2007, complaining of chronic pain.  R. at 294.  Plaintiff reported that he took four to ten 30 mg doses of oxycodone a day, as well as valium.  R. at 294.  Dr. Chang's examination revealed "no gross musculoskeletal abnormalities." R. at 294.  Dr. Chang noted that plaintiff's "affect [was] somewhat agitated" and that plaintiff's "pain seem[ed] somewhat out of proportion."  R. at 294.  Plaintiff inquired "two or three times" about obtaining a prescription for demerol.  R. at 295.  Dr. Chang told plaintiff that he would only consider prescribing medication if plaintiff were on a more stable pain management regimen, and offered plaintiff a consultation at the University of Virginia Pain Management Center.  R. at 295.

As with Dr. Chang, plaintiff saw Dr. Stubbe once, on May 8, 2007, reporting lower back pain and seeking pain management treatment.  R. at 292.  Dr. Stubbe stated that plaintiff "look[ed] like he was in a lot of pain" and that plaintiff had a steady tremor in his left leg.  R. at 292.  Dr. Stubbe's notes reflect that plaintiff stated that he "[r]an out of his pain mgmt person (*sic*)" and he was "waiting to see somebody at UVA."  R. at 292.  Plaintiff told Dr. Stubbe that

he was taking 30 mg doses of oxycodone four times a day, and 10 mg doses of valium three times a day.  R. at 292.  Dr. Stubbe's notes state that plaintiff was running out of oxycodone, so he would "help him."  R. at 292.  Dr. Stubbe prescribed plaintiff 120 30 mg doses of oxycodone and 90 10 mg doses of valium with no refills.  R. at 292.  Plaintiff did not make a follow-up appointment with Dr. Stubbe, who characterized the appointment as "temporary acute care."  R. at 292.

Plaintiff then saw Dr. Westfield on three occasions, on June 28, July 31, and August 30, 2007.  R. at 299-303.  On June 28, 2007,  Dr. Westfield reported that plaintiff was "seeking out [a] doctor to write his chronic pain medications" because he found that his then-current regimen was working well and his previous doctors had sought to change it.  R. at 302.  Dr. Westfield diagnosed plaintiff with cervical spinal stenosis secondary to cervical degenerative disc disease, sciatica, and radiculopathy.  R. at 302.  Dr. Westfield provided plaintiff with prescriptions for oxycodone and valium, and stated that plaintiff would have a follow-up appointment in a month "at which point a pain contract will need to be signed."  R. at 302.  Dr. Westfield also stated that she would arrange an appointment at the University of Virginia Pain Management Center.  R. at 302.  At his July 31, 2007 appointment, plaintiff stated that he was trying to get an appointment at the pain management center but had not yet scheduled one.  R. at 301.  He signed a pain contract, which was placed in his file, and received prescriptions for oxycodone and valium without refill.  R. at 301.  At his final appointment, on August 30, 2007, plaintiff again stated that he was unable to make an appointment at the pain management center.  R. at 299.  Dr. Westfield provided him with prescriptions for oxycodone and valium without refill, but told plaintiff that she would not provide any further refills if plaintiff had not scheduled an appointment at the pain

management center by the time of his next appointment.  R. at 299.

A vocational expert also testified at the hearing before the ALJ with regard to the existence of jobs in the national economy for a person of plaintiff's age, education, work experience, and residual functional capacity.  R. at 26, 94-106.  The vocational expert testified that such an individual could perform the duties of a dispatcher, security monitor, or a telemarketer.  R. at 26, 95-96.  The vocational expert further testified that there were 124,000 dispatcher jobs in the national economy and 4,200 in the regional economy, 175,000 security monitor jobs in the national economy and 6,000 in the regional economy, and 250,000 telemarketer jobs in the national economy and 8,000 in the regional economy.  R. at 26, 95-96.

### III.

In accordance with 20 C.F.R. § 416.920(a), the ALJ proceeded with the five-step disability inquiry, determining in sequence (1) whether plaintiff is engaged in substantial gainful activity; (2) whether plaintiff has a severe impairment; (3) whether plaintiff has a severe impairment meeting the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) plaintiff's residual functional capacity to perform past relevant work; and (5) plaintiff's residual functional capacity to perform any work.  R. at 20-26.  The ALJ found that plaintiff (1) has not engaged in substantial gainful activity since August 1, 2003; (2) has a severe impairment, namely degenerative disc disease of the spine; (3) does not have a severe impairment meeting the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) does not have residual functional capacity to perform past relevant work.  R. at 21-25.  Those findings are not in dispute here.

With respect to the fifth determination, the ALJ found that plaintiff has the residual functional capacity to perform sedentary work that would permit him to sit and stand at his

discretion, but not require him to lift more than 10 pounds, to stand and walk for longer than 2

hours, or to sit for longer than 6 hours in an 8-hour day. R. at 22. The ALJ found that there were

jobs in significant numbers that plaintiff could perform, such as a dispatcher, a security monitor,

or a telemarketer. R. at 25-26.

In making his residual functional capacity determination, the ALJ first found that

plaintiff's medically determinable impairment could reasonably be expected to produce the

symptoms alleged by plaintiff. R. at 23. Next, consistent with 20 C.F.R. §§ 404.1529(c) and

416.929(c), the ALJ examined seven factors to evaluate the intensity, persistence, and limiting

effects of plaintiff's symptoms to determine the extent to which plaintiff's symptoms limit his

ability to work. R. at 22-23. The seven factors guiding the ALJ were (1) plaintiff's daily

activities; (2) the location, duration, frequency, and intensity of plaintiff's symptoms; (3)

aggravating and precipitating factors; (4) the type, dosage, effectiveness, and side effects of any

medication plaintiff takes to alleviate his symptoms; (5) other treatment plaintiff receives or has

received for his symptoms; (6) any other measures plaintiff takes to alleviate his symptoms; and

(7) any other factors concerning plaintiff's functional limitations and restrictions due to his

symptoms. R. at 22-23.

Based on those factors, the ALJ found that plaintiff's statements regarding the intensity,

persistence, and limiting effects of his symptoms were not credible. R. at 23. The ALJ found

that although plaintiff complains of "constant, debilitating pain," he had failed to obtain the pain

management consultation recommended by his physicians. R. at 24. The ALJ noted, "Failure to

follow prescribed treatment without good cause can be reason in and of itself to find that he is

not disabled." R. at 24. The ALJ found that plaintiff did not have a treating relationship with

any physician, and that he sought medical care only when he needed prescription refills.  R. at 24.

The ALJ pointed to the fact that plaintiff stopped seeing Dr. Bakhshi "shortly after he was told

that he 'cannot just live off the pain meds[,]'" did not return to see Dr. Chang after he refused to

prescribe pain medications, did not return to see Dr. Stubbe after receiving prescription refills,

and stopped seeing Dr. Westfield after she told plaintiff she would not prescribe any more pain

medications until plaintiff made an appointment with the pain management clinic.  R. at 24.  The

ALJ found that if plaintiff were in the pain he alleged, he would seek regular medical treatment

and comply with the recommendations of his physicians.  R. at 25.  The ALJ did not give any

credence to the notion that plaintiff's aversion to surgery was good cause to disregard medical

advice, as no doctor had definitively told plaintiff he needed surgery.  R. at 25.

    The ALJ found that while plaintiff does have an impairment that could give rise to pain,

the evidence regarding plaintiff's subjective experience suggested that the pain was not so

intolerable as to give rise to a disability.  R. at 25.  The ALJ found that plaintiff "does not seek

medical treatment except to obtain narcotics; he complains of pain far out of proportion to the

clinical findings; and secondary gain in the form of drug-seeking appears to play a significant

role in those complaints."  R. at 25.  The ALJ further found that plaintiff "is independent in most

activities of daily living[,]" pointing to evidence that plaintiff does light household chores, cooks

meals, mows grass, walks on a treadmill, watches television, uses a CB radio, and studies for a

ham radio license.  R. at 25.  The ALJ noted that the last three of those activities require

concentration that "would be difficult to sustain in the presence of incapacitating pain."  R. at 25.

    Relying on the testimony of the vocational expert regarding the requirements and

numbers of dispatcher, security monitor, and telemarketer jobs, the ALJ found that plaintiff could

successfully adjust to other work existing in significant numbers in the national economy. R. at 26.

The ALJ thus found that plaintiff was not disabled within the meaning of the Social Security Act from August 1, 2003, through the date of the ALJ's decision, December 28, 2007. R. at 26.

**IV.**

Plaintiff argues first that the ALJ's credibility determination was not supported by substantial evidence. Specifically, plaintiff takes issue with the ALJ's findings that (1) plaintiff failed to comply with treatment recommendations by not following through with pain management consultation; (2) plaintiff has no treating physician and seeks care only to get narcotic prescriptions refilled; (3) plaintiff's desire to avoid surgery is an insufficient rationale for disregarding medical advice because no doctor had stated that plaintiff must have surgery; (4) plaintiff's pain complaints are far out of proportion to clinical findings; (5) drug-seeking played a significant role in plaintiff's complaints of pain; and (6) plaintiff is independent in most daily activities.

Substantial evidence, as the Fourth Circuit has stated, is "evidence which a reasonable mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). As discussed below, each finding challenged by plaintiff is supported by substantial evidence in the record.

**A.**

First, with respect to plaintiff's disregard of medical advice regarding pain management

consultation, plaintiff argues that the ALJ erroneously stated the law when he stated that such

disregard for medical advice could itself be reason for a finding of non-disability.  Setting aside

whether the ALJ made a correct statement of the law, as defendant argues in response, it is clear

that the ALJ did not determine that plaintiff was not disabled on the basis of his disregard for

medical advice alone.  Plaintiff argues that the ALJ's "credibility analysis is tainted by the

misconception[,]" but offers no examples of such a taint, and the court cannot find any in the

ALJ's opinion.  Moreover, there is substantial evidence in the record that plaintiff did disregard

medical advice regarding pain management consultation.

The notes of Dr. Bakhshi's final appointment with plaintiff indicate that Dr. Bakhshi

referred plaintiff to pain management, but the subsequent evidence shows that plaintiff did not

take that advice.  Dr. Chang offered plaintiff a consultation with the University of Virginia Pain

Management Center, and told plaintiff that he would not provide him with narcotic medication

prescriptions until plaintiff made an appointment with the center.  Plaintiff did not make an

appointment with the center, and did not return to Dr. Chang after one appointment.  The notes

from plaintiff's first visit to Dr. Westfield indicate that the treatment plan was for plaintiff to

make an appointment at the same pain management center, but plaintiff did not do so.  At his

next appointment a month later, plaintiff stated that he was trying to make an appointment, but

was unable to do so.  At his third and final appointment, plaintiff still had not made an

appointment with the pain management center, and was told he would not receive further

narcotic medication refills until he had done so.  As with Dr. Chang, plaintiff did not return to

Dr. Westfield after receiving that ultimatum.

After Dr. Bakhshi referred plaintiff to pain management, two more physicians told plaintiff over the course of more than three months that he needed to make an appointment for a pain management consultation, and plaintiff did not do so despite being told he would not receive further narcotic medication refills until he made such an appointment.  There is thus substantial evidence in the record to support the ALJ's finding that plaintiff disregarded medical advice with respect to pain management.

**B.**

Second, plaintiff challenges the ALJ's finding that plaintiff has no treating physician, arguing that the ALJ focused only on whether the plaintiff had a treating physician at the time of the hearing and ignored the fact that plaintiff was treated frequently by Dr. Bakhshi between November 2005 and March 2007.  Plaintiff advances no argument, however, that the ALJ was required to note the existence of a treating relationship at any time in plaintiff's medical history. The ALJ's finding was that plaintiff "has no treatment relationship with any physician and seeks medical care only when he needs his narcotic pain medications refilled."  That finding is supported by substantial evidence.

The record indicates that plaintiff saw four primary care doctors over the span of twenty-one months, and that after plaintiff left Dr. Bakhshi's care, he sought the care of three primary care doctors over the course of five months.  That is substantial evidence to support a finding that plaintiff did not have a treating relationship with a physician at the time of the hearing before the ALJ.  As to the second aspect of the ALJ's finding, plaintiff ended his relationship with Dr. Chang and Dr. Westfield after he was told he would receive no further narcotic medication

prescriptions until he made an appointment with the pain management center.  That constitutes

substantial evidence to support the finding that plaintiff seeks a new physician whenever his

current physician refuses to provide him with narcotic medication refills.

### C.

Third, plaintiff argues that there is no substantial evidence to support the ALJ's finding

that no doctor had stated definitively that plaintiff must have surgery and that plaintiff was

simply being referred for pain management.  Plaintiff points to Dr. Bakhshi's notes indicating

that plaintiff was advised to have surgery.

Beginning on May 29, 2006 and continuing through the next six appointments, Dr.

Bakhshi's notes state that plaintiff "has been advised to get a (*sic*) orthopedic opinion for

possible surgery."  The notes for December 14, 2006 state that plaintiff will "get all his records

together and we are going to get it evaluated for surgery."  The notes for plaintiff's next two, and

final, appointments, state that plaintiff "has been advised to have surgery done."  No other

physician's notes address the topic of surgery.  The notes of Dr. Bakhshi, Dr. Chang, and Dr.

Westfield all indicate that plaintiff was referred to pain management.

Dr. Bakhshi's notes reflecting that plaintiff was advised to get an *opinion* regarding

*possible* surgery do not suggest that Dr. Bakhshi told plaintiff that surgery was necessary, and

they are thus substantial evidence supporting the ALJ's finding.  The same applies to Dr.

Bakhshi's note indicating that plaintiff was getting his records together for a surgical evaluation.

The notes of plaintiff's final two appointments with Dr. Bakhshi do indicate that plaintiff was

advised to have surgery on at least one occasion.  The notes regarding plaintiff's final visit to Dr.

Bakhshi, however, indicate that Dr. Bakhshi referred plaintiff to pain management, thus

indicating that Dr. Bakhshi was not prescribing surgery as the sole and necessary method of

treatment.  There is thus substantial evidence supporting the ALJ's finding that plaintiff was not

told definitively that he must have surgery.  Furthermore, the notes of Dr. Bakhshi, Dr. Chang,

and Dr. Westfield indicating that plaintiff was referred to pain management are substantial

evidence supporting the ALJ's finding that plaintiff was being referred to pain management as a

primary treatment plan.

**D.**

Fourth, plaintiff argues that the ALJ's finding that plaintiff's pain complaints were far out

of proportion to clinical findings is unfounded, noting that Dr. Chang is the only physician to

comment on plaintiff's complaints, and that he opined that plaintiff's complaints were

"somewhat out of proportion" while also stating that plaintiff's "pain is not adequately

controlled[.]"

Plaintiff's objection that the ALJ's finding was based on the notes of only one doctor who

saw plaintiff only once is unavailing.  The notes of the other physicians who saw plaintiff did not

comment on whether plaintiff's pain complaints were in line with clinical findings, but that does

not rebut the findings of Dr. Chang.  Dr. Chang did conduct an examination of plaintiff, and the

ALJ was entitled to rely on his observations.  Plaintiff's objection that the ALJ's finding that

plaintiff's complaints were "far" out of proportion cannot be based on Dr. Chang's

characterization of plaintiff's complaints as "somewhat" out of proportion is well-taken but

ultimately inconsequential.  The gravamen of the ALJ's finding was that plaintiff's pain

complaints were out of proportion with clinical findings, and Dr. Chang's notes provide

substantial evidence for that finding.  In the context of the numerous factors cited by the ALJ in

finding that plaintiff's subjective complaints of pain were not credible, the distinction plaintiff

raises is negligible, if not semantic.

E.

Fifth, plaintiff argues that the ALJ's conclusion that drug-seeking appears to play a

significant role in plaintiff's pain complaints is unwarranted, calling it "essentially an exercise in

medical speculation" and disputing the ALJ's finding that plaintiff ended his relationship with

Dr. Bakhshi shortly after being told he "cannot just live off the pain meds."

With respect to plaintiff's relationship with Dr. Bakhshi, the first indication of Dr.

Bakhshi's advice to plaintiff that he "cannot just live off the pain meds" appears in Dr. Bakhshi's

notes of plaintiff's May 29, 2006 appointment, and appears in his next six appointment notes.

Plaintiff's last appointment with Dr. Bakhshi was on March 12, 2007.  Thus, nearly ten months

passed between the initial advice and the point at which plaintiff stopped seeing Dr. Bakhshi, and

plaintiff appears to have a valid argument that the ALJ's finding is not supported by the record.

The record also shows, though, that beginning on December 14, 2006, Dr. Bakhshi's advice

regarding medication changed, in that he advised plaintiff that he "needs to wean himself off the

narcotic pain meds in the near future."  Plaintiff returned to Dr. Bakhshi only twice more after

that change in advice, and stopped seeing Dr. Bakhshi three months later.  Thus, there is

substantial evidence to support a finding that plaintiff stopped seeing Dr. Bakhshi shortly after it

became apparent that Dr. Bakhshi intended to pursue a course of treatment that would get

plaintiff off his regimen of narcotic pain medications.  That is the import of the ALJ's finding,

and plaintiff's argument is therefore unavailing.

Plaintiff cites no authority for the proposition that a finding of drug-seeking behavior is a

14

determination that can be made only by a medical expert, and the court has found no authority to that effect.  There is, however, ample evidence in the record to support the ALJ's conclusion.  As discussed above, plaintiff stopped seeing Dr. Bakhshi shortly after he told plaintiff he needed to wean himself off his narcotic pain medications.  Plaintiff then saw Dr. Chang, who noted that plaintiff inquired specifically about demerol.  Dr. Chang was willing to prescribe plaintiff narcotic pain medications only on the condition that plaintiff make an appointment with a pain management center.  Plaintiff did not do so, and did not return to Dr. Chang after that one appointment.  Then, after a one-time appointment with Dr. Stubbe, at which plaintiff received narcotic pain medication prescriptions, plaintiff moved on to Dr. Westfield.  As with Dr. Chang, plaintiff stopped seeing Dr. Westfield after he was told she would not prescribe any further narcotic pain medications until plaintiff made an appointment with a pain management center.  There is thus substantial evidence in the record to conclude that plaintiff stopped seeing two of his four most recent physicians as soon as he or she refused to provide plaintiff with narcotic pain medication prescriptions.  That is sufficient to draw a conclusion that plaintiff's relationships with physicians evidence drug-seeking behavior.

**F.**

Sixth, plaintiff disputes the ALJ's finding that plaintiff is "independent in most activities of daily living."  Plaintiff argues that while plaintiff engages in the activities cited by the ALJ, the ALJ selectively used the testimony regarding plaintiff's daily activities because there is no testimony that plaintiff engages in them for extended periods of time.  Plaintiff further argues that participation in everyday activities is not sufficient to preclude a finding of disability, citing *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006).

Contrary to plaintiff's argument, there is substantial evidence supporting the ALJ's conclusion. With respect to household chores, plaintiff stated that he helps out as he is able, including taking care of animals and helping to make meals. There are no qualifying statements in his testimony regarding those activities. Plaintiff did qualify that he tries to mow the grass "once in a while," but that is generally not a task that is required daily, and one therefore would not be expected to perform it more than once in a while. When asked how he generally occupies his days, plaintiff stated that he studies for a ham radio license and uses a CB radio. That suggests that plaintiff is able to engage in productive activity that requires concentration, and is in keeping with the ALJ's finding of general independence. Plaintiff argues that "it is unclear how much studying he has been able to accomplish, as at the time of the hearing he still had not managed to obtain his amateur radio license." There is no evidence in the record that plaintiff is limited in his ability to study, however, and the unrebutted evidence supports the ALJ's conclusion. Plaintiff also argues that his statements that pain interferes with his ability to concentrate qualify his statements regarding his daily activities, but that argument is circular, as the evidence regarding plaintiff's daily activities is meant to probe the credibility of plaintiff's complaints of pain.

*Hines* also does not offer support for plaintiff's argument. In *Hines*, the Fourth Circuit held that the ALJ erred in finding that evidence of participation in daily activities alone was sufficient to contradict the claimant's subjective complaints of sickle cell disease-related pain. *Hines*, 453 F.3d at 565-66. In this case, the ALJ points to plaintiff's refusal to follow medical advice regarding pain management consultation, evidence of drug-seeking behavior on plaintiff's part, the opinion of Dr. Chang that plaintiff's complaints of pain were out of proportion with

clinical findings, and plaintiff's reports of his daily activities in finding plaintiff's subjective

complaints not to be credible.  Thus, the ALJ treated the evidence of plaintiff's daily activities as

corroborative of the other evidence, not as dispositive of the matter, as the mistaken ALJ in

*Hines* did.

### G.

Finally, plaintiff argues that the ALJ erred by failing to explain how his credibility

findings related to his determination of plaintiff's residual functional capacity.  Contrary to

plaintiff's assertion, the ALJ's opinion makes clear how his credibility findings bear on his

residual functional capacity determination.  As the ALJ states, once he has found, as he did, that

plaintiff has a medically-determinable impairment that could be expected to produce plaintiff's

pain symptoms, the ALJ must determine the how the intensity, persistence, and limiting effects

of that pain affect plaintiff's ability to work.  *See* R. at 22.  Even in the absence of objective

evidence of the degree of plaintiff's pain, the ALJ was required to look to subjective evidence.

*See Hines*, 453 F.3d at 564-65 (objective evidence of pain is not necessary for finding of

disability; subjective evidence alone may be sufficient).  The ALJ found the subjective evidence

of plaintiff's pain not to be credible, and as discussed above, that finding is supported by

substantial evidence.  The ALJ therefore appropriately found that plaintiff's pain symptoms did

not have any effect on plaintiff's residual functional capacity to perform sedentary work with

certain limitations.

### V.

Plaintiff's second principal argument is that the ALJ erred by relying on the testimony of

the vocational expert.  Specifically, plaintiff argues that the vocational expert identified semi-

skilled and skilled work, despite plaintiff's lack of transferable skills.

Plaintiff argues that the ALJ improperly considered the suggested positions of dispatcher and telemarketer because they are skilled and semi-skilled, respectively, pursuant to the Dictionary of Occupational Titles and Social Security Ruling 00-4p, 2000 WL 1898704 (S.S.A. 2000). Plaintiff concedes that the ALJ properly identified the position of security monitor as unskilled, but argues that the court cannot determine whether the 175,000 security monitor jobs in the national economy and 6,000 in the regional economy constitute significant numbers. Even assuming that plaintiff is correct that the evidence regarding dispatcher and telemarketer positions was improperly considered and therefore cannot constitute substantial evidence to support the ALJ's finding that there are jobs in significant numbers that plaintiff could perform, the evidence regarding security monitor positions is substantial evidence supporting that finding.

Various circuits have found that 110, 200, and 174 jobs in the local economy constitute significant numbers. *Clayton v. Astrue*, No. 2:10-cv-00284, 2011 WL 4345244, at *11 (E.D. Va. Aug. 18, 2011) (Report and Recommendation) (citing *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (dicta); *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)), *adopted by* 2011 WL 4345238 (E.D. Va. Sept.14, 2011) (Order). Even absent the evidence regarding dispatcher and telemarketer positions, the evidence in the record shows that there are 6,000 security monitor jobs in the regional economy. That is in excess of numbers that have previously been found to be significant. There is thus substantial evidence in the record to support the ALJ's finding that there exist significant numbers of jobs in the regional economy that plaintiff could perform.

**VI.**

Lastly, plaintiff argues that there is new and material evidence warranting remand

pursuant to 42 U.S.C. § 405(g).  Plaintiff offers an opinion of Kritis Dasgupta, M.D., dated April

1, 2011.  Dr. Dasgupta's opinion states that he initially evaluated plaintiff on May 10, 2010 and

has "followed" him since then.  Dr. Dasgutpa further states that he reviewed plaintiff's medical

records from October 28, 1998 to March 12, 2007 and a letter from Sarah Wynn, Pharm.D.,

"who has followed [plaintiff] for the past 5 years."  Dr. Dasgupta opines that plaintiff "has had

significant deficits consistent with post-concussive syndrome since [an automobile accident in

2005[,]" including "memory deficits and psychological issues (anger, frustration, and

irritability)."  Dr. Dasgupta states that "[a]s a result of his post-concussive syndrome, [plaintiff]

has been unable to hold competitive employment since 2005 and has therefore been disabled."

While Dr. Dasgupta's opinion does constitute new evidence, it does not warrant remand for its

consideration because it is not material.

Plaintiff seeks remand pursuant to the sixth sentence of 42 U.S.C. § 405(g), which

permits the court to order the Commissioner of Social Security to hear new evidence "only upon

a showing that there is new evidence which is material and that there is good cause for the failure

to incorporate such evidence into the record . . . ."  Thus, evidence warrants remand only if it is

both new and material.  Evidence is new "if it is not duplicative or cumulative[,]" and it is

material "if there is a reasonable possibility that the new evidence would have changed the

outcome."  *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)

(citations omitted).

Dr. Dasgupta's letter is not cumulative or duplicative of evidence in the record, as there is

no evidence in the record discussing post-concussive symptoms and their resulting effect on

plaintiff.  The apparent reason there is no such evidence, though, is that plaintiff was alleging

disability on the basis of pain resulting from leg, neck, and arm injuries, not from mental

impairments of the type described by Dr. Dasgupta.  Even at the hearing before the ALJ,

plaintiff's attorney denied that plaintiff was alleging severe mental impairments.  *See* R. at 88.  In

short, the question of mental impairments such as post-concussive syndrome was not before the

ALJ, and evidence to that effect therefore necessarily would not have a reasonable possibility of

changing the outcome.  Dr. Dasgupta's opinion thus is not material within the meaning of the

sixth sentence of 42 U.S.C. § 405(g), and remand for its consideration is not warranted.

## VII.

The court finds that the decision of the ALJ, and specifically his residual functional

capacity determination and identification of jobs in significant numbers that plaintiff could

perform, is supported by substantial evidence in the record.  The court further finds that the

opinion of Dr. Dasgupta does constitute new evidence, but it is not material and therefore does

not warrant remand.

Accordingly, plaintiff's motion for summary judgment is DENIED and defendant's

motion for summary judgment is GRANTED.

/s/
_____
Thomas Rawles Jones, Jr.
United States Magistrate Judge

Alexandria, Virginia
December 16, 2011